Francoise SAMEDI, Plaintiff,

v.

MIAMI–DADE COUNTY,
et al., Defendants.

No. 98–3055–CIV.

United States District Court,
S.D. Florida.

Jan. 26, 2001.

Patricia Clarice Ellis, Patricia C. Ellis, Opa–Locka, FL, for Francoise Samedi, plaintiff.

Thomas A. Tucker Ronzetti, Dade County Attorney's Office, Miami, FL, for Miami–Dade County, Donald Godwin, Lem Jones, David White, defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

HOEVELER, Senior District Judge.

THIS CAUSE comes before the Court upon various dispositive motions. The Court heard oral arguments on these motions on January 13, 2000. Having been advised in the premises, it is hereby **ORDERED AND ADJUDGED** as follows:

(I) Defendant David White's Motion for Summary Judgment, filed September 10, 1999, is **GRANTED** with regard to Counts VI and IX of the Second Amended Complaint.

(II) Defendants Donald Godwin and Lem Jones's [joint] Motion for Summary Judgment, filed November 24, 1999, is **GRANTED** with regard to Counts VII and VIII of the Second Amended Complaint.

(III) Defendant Miami–Dade County's Motion for Summary Judgment, filed November 24, 1999, is **GRANTED IN PART AND DENIED IN PART.** The motion is granted with respect to Counts III, IV, V, X, XI, XIII, of the Second Amended Complaint. The motion is denied regarding Counts I, II, and XII of the Second Amended Complaint.

(IV) Defendants Don Godwin and Lem Jones's [joint] Motion for Judgment on the Pleadings, filed August 27, 1999, is **GRANTED** with regard to Count XV of the Second Amended Complaint.

### Background

Plaintiff is a black woman who arrived in Miami, Florida from her native Haiti in 1992. Shortly after her arrival in Miami, Plaintiff found employment through various temporary agencies. These agencies secured work for Plaintiff as a temporary employee in the Trash Division of the Solid Waste Management Department of Metro Dade County ("County"), beginning in 1992 and continuing at least until 1999. *See* Deposition of Samedi, Vol. 1 at p. 26, l. 12.[1] Plaintiff registered with these employment agencies at one of the County's Trash Division offices. Plaintiff has received her paychecks from the various temporary employment agencies that employ her, and not from County. At no time has Plaintiff ever been hired as a County employee.

When Plaintiff began working at County, she spoke only Creole. She completed four years of formal schooling while in Haiti. At all times relevant to the instant

---

1. For reasons that may or may not be associated with the allegations in the instant case, Plaintiff has not reported to work at County since summer 1999. *See* Deposition of Samedi, Vol. III, p. 5–6; Plaintiff's Statement of Material Facts in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, at ¶ ¶ 2, 8.

case, Plaintiff spoke and understood very little English[2] and was unable to read English. Plaintiff's lawsuit stems from numerous incidents of heinous sexual assaults that two County employees, Lem Jones and Donald Godwin, allegedly committed against her at various times beginning in September 1992 and ending, at the latest, by August 25, 1997. *See* Deposition of Samedi, Vol. II at p. 147–48 (testifying that she has not had any improper encounters with Godwin or Jones after August 25, 1997). For the purposes of summary judgment, the Court shall construe the following facts in the light most favorable to Plaintiff as the non-moving party on summary judgment. *See Rollins v. Tech-South, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).

During the time period when she was subjected to the events underlying the instant case, Plaintiff was routinely assigned job duties both "in the field" and in office environments. In the field, Plaintiff rode on a clean-up truck that visited different dumping stations. She also worked with crane operators who used their machines to collect trash from residential areas or from the side of the road. Plaintiff functioned as a grounds person, responsible for picking up trash from those areas. During her assignments in the offices at County, Plaintiff performed custodial tasks. On more than two occasions, she was instructed to clean and cook fish that County employees brought to the office.

From September of 1992 until August 25, 1997, Lem Jones was a County employ-ee working as a trash crane operator for the Trash Division of the Solid Waste Department. Donald Godwin was also a County employee within the Trash Division, working as a Waste Supervisor I.[3] In the course of her work at County, Plaintiff came into contact with both Jones and Godwin. Plaintiff does not remember the number of incidents nor the particulars of every incident, however, Jones and Godwin separately forced Plaintiff to have sex with each of them, separately, on many occasions during working hours.[4] Both Jones and Godwin told Plaintiff that she had to submit to them because they were her superiors at work. Plaintiff feared that she would be fired if she did not comply. She also believed that County would permanently hire her if she engaged in sex with Jones and Godwin. *See* Plaintiff's Statement of Material Facts in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment at ¶ 17 (describing Plaintiff's fear of losing her job, as well as her "embarrassment and shame," as reasons why she did not report Jones and Godwin's abuse of her) (internal citations omitted).

Approximately two weeks after Plaintiff began working at County in September 1992, and until sometime in 1996, Lem Jones forced Plaintiff to have sex with him. The first incident happened at work while Plaintiff and Jones were in the cab of a trash crane vehicle. *See* Deposition of Samedi, Vol. I at p. 42, *l.* 23 to p. 43, *l.* 1. While Plaintiff fought against Jones, he

---

**2.** Plaintiff gave her deposition testimony in the instant case on August 24, 1999 and September 7, 1999, with the aid of an English/Creole translator.

**3.** The Federal Employment Fair Practices Office, an agency of the County managers, conducted an investigation into Plaintiff's complaint against Jones and Godwin. Pursuant to that investigation, both Jones and Godwin were demoted. *See* Deposition of White at p. 47, *l.* 15–25.

**4.** Neither Jones nor Godwin have been prosecuted in connection with the allegations in the instant case.

pushed her, told her that he was her boss, and had forced sexual relations with her. Not until August 25, 1997, nearly five years after the incident, did Plaintiff lodge a complaint with anyone at County regarding what Jones had done to her on that day or at any other time.

On another occasion, Jones forced Plaintiff to have sex with him at a motel during their lunch break from work. Plaintiff did not tell anyone about this event for fear that she would lose her job. At another time, Jones removed Plaintiff's underwear and he, along with another co-worker, paid a female passerby "to stick her tongue in [Plaintiff's] private" against Plaintiff's will. *See id.*, Vol. III at p. 30, *l.* 19. On yet another occasion, Jones instructed a male co-worker to remove his clothing. Jones then asked Plaintiff to join the nude man, but Plaintiff fled. In addition to these events, Jones would refuse to take Plaintiff to a restroom while they worked together in the field; Plaintiff would have to urinate on public streets, sometimes while Jones watched her.

For unspecified reasons, Plaintiff stopped working on Jones's crew in 1996. Thereafter, Jones no longer forced sexual encounters on Plaintiff. Even once Plaintiff resumed work on Jones's crew in 1997, Jones did not have any further sexual contact with Plaintiff. However, sometime in 1996 or 1997, Donald Godwin began to force sexual relations[5] on Plaintiff. One incident occurred in the bathroom of an office at the Trash Division's 58th Street site in Miami. Plaintiff tried to fight Godwin, but he physically overwhelmed her,

threatened to fire her if she did not comply, and forced her to perform fellatio on him. Perhaps a month later, Godwin forced sexual relations on Plaintiff in a "box house" where cleaning supplies were stored. Godwin threw Plaintiff to the floor, told her that he was her boss and/or her supervisor, and threatened her that he was going to fire her if she did not submit. As he committed the sexual act, Godwin called Plaintiff a "Haitian dumb." *See id.*, Vol. II at p. 117, *l.* 25.

At another time, Godwin ostensibly was to drive Plaintiff home in one of the County's cars so she could get footwear more appropriate for her working conditions. Instead of proceeding to Plaintiff's home, Godwin parked the car in a wooded area and forced Plaintiff to have non-consensual sex on the ground outside the car. Sometimes while Godwin worked on Jones's crew, Godwin would come out to the field where Plaintiff worked, telling her that he had work for her to do. Several times, "when he got to the truck with me, sometimes he would get his pants down and he asked me to suck his private." *Id.*, Vol. II at p. 123, *l.* 5–6. In addition, Godwin once took Plaintiff to his friend's home where Godwin had forcible sex with Plaintiff. Afterward, Plaintiff "tried" to tell Jones that Godwin had taken her to his friend's home and had sex with her, but Plaintiff believes that Jones did not understand her English. *See id.*, Vol. II at 126, *l.* 5–16. Plaintiff admits that she told no supervisors or human resources personnel at County until August 25, 1997, about what Godwin had repeatedly done to her.

Plaintiff interviewed for a permanent job with County in March 1997, and on two

---

5. The precise nature of these sexual relations is not clear from the Plaintiff's deposition testimony, nor is the Court required to delve into the debasing minutiae of these events. For the purposes of these motions, it is suffi-

cient to note that, construing the facts in the light most favorable to Plaintiff, she was subjected to digital vaginal penetration, sexual intercourse, and/or oral copulation.

other occasions.[6] *See id.*, Vol. III at p. 17, l. 21–22. That position required communication skills such that the employee can both "instruct[ ] citizens in backing their vehicles in order to dump their trash" and orally "inform[ ] the public as to the procedures for dumping." Exhibit 1 to Declaration of Cecilia Brewer. The position also requires an eighth grade education. *See id.* Plaintiff did not receive an offer for this position, yet she continued working at County as a temporary employee.

Matters between Plaintiff and County came to a head on August 25, 1997 when Alonzo Wright, a County employee, told Plaintiff and several other temporary workers that no work was available for them that day. Plaintiff and the other workers went to see Defendant White about the reduction in their work hours. White referred them back to Mr. Wright, who provided no response. The group was apparently directed to the office of Pamela Payne, Chief of the Human Resources Division for County's Department of Solid Waste Management. At that point, Plaintiff divulged to Ms. Payne the allegations of sexual assault and sexual harassment against Jones and Godwin. *See* Declara-

tion of Pamela Payne at ¶ 4. Ms. Payne began an investigation immediately. As a result of the investigation, both Jones and Godwin were relocated away from Plaintiff's work site and were demoted.

Prior to August 25, 1997, the only person Plaintiff told about any of the incidents involving her and either Godwin or Jones was her co-worker, Inetha Hawkins. *See* Deposition of Samedi, Vol. III at p. 34, l. 10 to p. 35, l. 16. Plaintiff recounted to Ms. Hawkins "what Don [Godwin] did to me." *Id.*, Vol. III at p. 35, l. 10. After the events of August 25, 1997, Plaintiff retained counsel. On September 8, 1997, Plaintiff lodged a County Affirmative Action Complaint and an EEOC Charge of Discrimination on the basis of sex and national origin discrimination. *See* Exhibits A and C to Second Amended Complaint. On September 9, 1998, Plaintiff received a Right to Sue Letter. *See* Exhibit B to Second Amended Complaint. The instant case was filed on December 14, 1998.[7]

## ANALYSIS

### Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to in-

---

6. Whether or not Plaintiff applied for a County position, as opposed to the County offering her a courtesy interview for the job on its own initiative, is unclear. *See* Deposition of Samedi, Vol. III at p. 13–15 (testifying that she was interviewed for a permanent, County job but not specifying whether she actually applied for the position); Declaration of Cecilia Brewer at ¶ 3 ("temporary workers such as Francoise Samedi were given a 'courtesy' interview regardless of whether they applied").

7. Plaintiff's Second Amended Complaint, filed November 3, 1999, sets forth the following claims: Count I: Title VII Sexual Harassment–Hostile Work Environment (against County); Count II: Title VII Sexual Harassment and Sexual Assault Quid Pro Quo

(against County); Count III: Title VII Sexual Harassment and Sexual Assault Retaliation (against County); Count IV: § 1983 (against County); Count V: § 1983 Retaliation (against County); Count VI: § 1983 (against White); Count VII: § 1983 (against Godwin); Count VIII: § 1983 (against Jones), Count IX: § 1983 Retaliation (against White), Count X: § 760,01 et.seq. (against County); Count XI: Negligent Supervision (against County), Count XII: Negligent Retention (against County), Count XIII: Intentional Infliction of Emotional Distress (against County); Count XIV: Assault and Battery (against Godwin and Jones); Count XV: Violence Against Women Act, 42 U.S.C. § 13981 (against Godwin and Jones); Count XVI: Invasion of Privacy (against Godwin and Jones).

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Material" facts are those that relate to the substantive law of each cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one about which a reasonable fact finder could find for the nonmoving party. *Id.* The initial burden in a motion for summary judgment falls on the moving party "to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The district court must view that evidence in the light most favorable to the nonmoving party. *Rollins v. TechSouth, Inc.* 833 F.2d 1525, 1528 (11th Cir.1987).

Once the moving party meets the initial burden, the burden shifts to the nonmoving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. To avoid a grant of summary judgment, the nonmoving party must then supplement the record with "specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Pastrana v. United States,* 670 F.Supp. 954, 960 (S.D.Fla.1987). Parties may not rely on the pleadings alone to satisfy their respective burdens on summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Federal Rule of Civil Procedure 56(c) provides, in pertinent part, that "[t]he adverse party prior to the day of hearing [on a motion for summary judgment] may serve opposing affidavits. The judgment sought [that is, summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." Fed. R.Civ.P. 56(c).

### I. *Defendant White's Motion for Summary Judgment*

Defendant White ("White") was the Chief of the Trash Division of the Solid Waste Department at County during the time relevant to this lawsuit.[8] *See* White's Statement of Material Facts in Support of his Motion for Summary Judgment at ¶ 1. Plaintiff does *not* allege that White himself sexually assaulted or harassed her. However, Plaintiff sues White in Count VI ("Section 1983") for White's alleged failure to exercise his superior position over Jones and Godwin. She also sues White in Count IX ("Section 1983 Retaliation") for White's failure to hire Plaintiff as a permanent employee. White contends that summary judgment is appropriate because Plaintiff presents no genuine issues of material fact and because White enjoys qualified immunity.

At the outset, the Court notes that Plaintiff filed an opposition to White's Motion for Summary Judgment, yet she did

---

**8.** Although elsewhere White states that he became Chief only in 1996, *see* Declaration of David White at ¶ 1 ("I have been the Chief of the Trash Division of the Solid Waste Department of Miami–Dade County since 1996."), or since approximately 1994, *see* Deposition of David White at 5, *l.* 15 (stating that White had

been Chief for five years as of 1999), White is bound by his statement of material facts, *see* S.D.Fla.L.R. 7.5, particularly as the Court must construe the facts in the light most favorable to Plaintiff. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987).

not timely file a Statement of Material Facts to contradict White's Statement of Material Facts. Accordingly, "[a]ll material facts set forth in [White's] statement ... will be deemed admitted...." S.D.Fla. L.R. 7.5.

## A. Count VI

██ Plaintiff's Count VI is a 42 U.S.C. § 1983 claim against White in his supervisory capacity over Jones and Godwin, the two people who allegedly sexually assaulted and harassed Plaintiff. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.....

42 U.S.C.A. § 1983 (West Supp.2000). Section 1983 permits a remedy for the deprivation of federal rights without creating any substantive rights. *See Almand v. DeKalb County,* 103 F.3d 1510, 1512 (11th Cir.1997). The statute first requires that a plaintiff "allege that some person has deprived him of a federal right ... [and second,] that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

██ Count VI presents a claim for White's supervisory liability under section 1983 for the deprivations of Plaintiff's federal rights that Jones and Godwin caused. However, theories of respondeat superior and vicarious liability cannot be used to hold supervisory officials liable under section 1983 for subordinate employees' violations of federal law or the Constitution. *See Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (citation omitted). Rather, supervisory liability inures under section 1983 only under two circumstances: (1) when the supervisor personally participates in the alleged violation, or (2) when the supervisor's actions are causally connected to the alleged violation of federal statutory or federal constitutional law. *See Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990).

Here, Plaintiff makes no argument that White himself sexually assaulted or sexually harassed her. Indeed, Count VI is premised solely on White's status as the supervisor of the men who perpetrated the sexual assaults and sexual harassment. *See* Second Amended Complaint at ¶ 85. Plaintiff appears to assert that this behavior violated her rights under the First and Fourteenth Amendments. *See* Second Amended Complaint at ¶ 101 (describing the federally protected rights as those protecting "complaining about sexual harassment and sexual assault and sex discrimination in the workplace.") The question therefore boils down to whether White's own actions are causally related to Jones and Godwin's behavior. This causal connection between White's supervision on the one hand and Jones and Godwin's violations of Plaintiff's First and Fourteenth Amendment rights on the other hand "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the

alleged deprivation, and he fails to do so." *Brown*, 906 F.2d at 671. This "widespread abuse" must be "obvious, flagrant, rampant and of continued duration...." *Id.*

Assuming that White was Jones and Godwin's "responsible supervisor" at all times material to the instant case, Plaintiff still has presented no genuine issue of material fact that White was on notice that Jones and Godwin were victimizing Plaintiff. Plaintiff admits that she did not notify any County employees until August 25, 1997, about the problems she had with Jones or Godwin. Prior to August 25, 1997, Plaintiff admittedly told Ms. Hawkins, and Ms. Hawkins alone, about the abuse perpetrated against her. However, Plaintiff has presented no evidence that Ms. Hawkins was a County employee. Rather, Plaintiff appears to have confided in Ms. Hawkins simply as a friend.

Plaintiff proffers evidence that people other than White had knowledge of Plaintiff's situation, perhaps inferring that White, too, should have known about Jones and Godwin's behavior. However, Plaintiff presents no evidence that White was privy to any of the workplace rumors regarding Plaintiff's interactions with Jones and Godwin—for example, that he was within earshot when such statements were made or that White was seen observing Jones and Godwin's assaults on Plaintiff. Thus, Plaintiff fails to establish any basis upon which White may be considered to have received notice of Jones and/or Godwin's treatment of Plaintiff.

Plaintiff also asserts that White was on notice of Jones and Godwin's behavior due to a history of harassment complaints at the Solid Waste Department. Plaintiff's attempts to show a "history of harassment" to infer White's notice of the harassment sufficient to sustain supervisory liability under section 1983 fails for two reasons. First, in order to defeat a motion for summary judgment, a plaintiff must present admissible evidence. *See, e.g.,* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence...."); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, Civil 3d, § 2727, at 497–98 (West 1998) ("Material that is inadmissible will not be considered on a summary-judgment motion because it would not establish a genuine issue of material fact if offered at trial...."). Several exhibits to Plaintiff's Memorandum of Law and Supporting Affidavits and Exhibits in Opposition to Defendant, David White's Motion for Summary Judgment ("Plaintiff's Opposition"), which Plaintiff may intend as support for her assertion that White had notice of the harassment, are incompetent evidence.[9]

Second, even were this evidence admissible, Plaintiff apparently seeks to use this

---

9. For example, Exhibit D, a memorandum from Juan de Ona to Marcia Saunders, dated March 13, 1998, was authenticated during Mr. De Ona's deposition, *see* Deposition of Juan De Ona at 6, l. 12–19; *see also* Fed. R.Evid. 901. However, Exhibit D contains incomplete attachments, *see* Fed.R.Evid. 106, and potential hearsay statements, *see* Fed. R.Evid. 801(c). Exhibit D is also at least partially irrelevant because it fails to show a history of harassment insofar as it discusses Plaintiff's very own claims against Godwin and Jones.

Exhibit G is a composite exhibit, containing memoranda and investigative reports of County personnel regarding sexual harassment complaints brought against people other than Godwin and Jones. For this reason, it is not particularly relevant. Likewise, Exhibit H is another composite exhibit, which contains, *inter alia*, County disciplinary action reports regarding people other than Jones and Godwin. For that reason, these reports are irrelevant. The reports from 1982 may

evidence to show a pattern or practice of sexual harassment in the Solid Waste Department. However, the causal link that will sustain a supervisor's liability under section 1983 is the supervisor's knowledge of a history of harassment perpetrated not by *any* employee for which the supervisor is responsible, but rather, by the *very same employee* whose actions are at issue in section 1983 claim against the supervisor. *See Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999); *Braddy v. Florida Dept. of Labor and Employment Security,* 133 F.3d 797, 802 (11th Cir.1998); *Cross v. State of Alabama,* 49 F.3d 1490, 1508 (11th Cir.1995); *Sims v. Glover,* 84 F.Supp.2d 1273, 1285 (M.D.Ala.1999). In the instant case, then, the relevant history of harassment must involve Jones and Godwin's past acts of harassment.

However, of the evidence that Plaintiff would offer in support of showing Jones and Godwin's history of harassment, some of it involves perpetrators other than Jones and/or Godwin. For instance, Exhibit G to Plaintiff's Memorandum, which is of debatable admissibility,[10] details harassment charges against a Rafael Trujillo and a Mr. Warren. As to allegations that *Godwin and Jones themselves* have created a "history of harassment" through their actions, Plaintiff offers an EEOC Charge of Discrimination that a Jennie Gamble filed, which claims that Don Godwin sexually harassed her at County. *See* Exhibit J to Plaintiff's Opposition. However, this Charge was signed on September 3, 1997, several weeks after Plaintiff had notified County officials of her own complaint. Therefore, because Exhibit J

came into existence after August 25, 1997, it is not particularly probative of a history of harassment of which White should have been aware prior to August 25, 1997.

Plaintiff also offers the Affidavit of Willie Warren. *See* Exhibit K to Plaintiff's Opposition. Mr. Warren is a trash/crane operator with County's Solid Waste Department. Mr. Warren's affidavit offers evidence that Defendant Godwin would "fondle and play" with a female County employee named Vivian Tolbert. *See* Affidavit of Willie Warren at ¶ 4. He recalls Jennie Gamble telling him about "Don", ostensibly Don Godwin, harassing Ms. Gamble. *See id.* at ¶ 2. Mr. Warren also heard "rumors about what [Plaintiff] was doing with Don Godwin, supervisor, and Lim [sic] Jones, crane operator." *See id.* at ¶ 9.

A number of rumors that several deponents in the instant case testified to hearing [11] is not competent evidence as it pertains to White's own knowledge that Jones and Godwin were harassing anyone. However, Jennie Gamble complained to White in July of 1997 that Godwin had sexually harassed Gamble. *See* Deposition of Jennie A. Gamble, p. 24, *l.* 18 to p. 25, *l.* 9. That White had this knowledge, in the month preceding Plaintiff's report of sexual harassment to Ms. Payne on August 25, 1997, is still insufficient as a matter of law to create the "history of harassment" necessary to sustain this cause of action. Ms. Gamble's testimony, construed in the light most favorable to Plaintiff, cannot defeat summary judgment on this count, as Ms. Gamble's report to White about Godwin's harassment of Gamble is the sole evidence

---

10. *See id.*

also have minimal probative value due to their age.

11. *See* Depositions of Juanita Tomlin, Karen Williams, Denise Alabre, and Jennie A. Gamble.

presented to support Plaintiff's theory that White had knowledge of the "obvious, flagrant, rampant" abuse. *See Brown,* 906 F.2d at 671. As a matter of law, the fact that Ms. Gamble "complained several times," *see* Deposition of Jennie A. Gamble, p. 25, *l.* 8, to White during a relatively short time period in July 1997 regarding Godwin's harassment of her does not meet the heightened standard of *Brown.* Accordingly, Plaintiff has failed to satisfy her burden of showing that White's supervisory actions were causally connected to the alleged violation of federal statutory or federal constitutional law that Godwin and/or Jones physically committed. Accordingly, supervisor liability is not supported by the facts and summary judgment is **granted** in favor of Defendant White on Count VI.

## B. Count IX

In Count VI, discussed above, Plaintiff sues White in his capacity as Jones and Godwin's supervisor. In contrast, Count IX asserts a section 1983 claim against White's actual exercise of his "supervisory position over" Plaintiff by retaliating against Plaintiff "for complaining about Godwin's and Jones' sexual harassment and sexual assault of her." Second Amended Complaint at ¶ 100, This claim does not survive summary judgment.

Plaintiff asserts that White retaliated [12] against her by failing to hire her as a permanent County employee. *See* Second Amended Complaint at ¶ 103(B). In so doing, White allegedly violated Plaintiff's "federally protected rights for complaining about sexual harassment and sexual assault," *see* Second Amended Complaint at

¶ 101, as well as Plaintiff's fight to "equal protection." *See id.* at ¶ 102. White asserts the defense of qualified immunity against these claims. Even assuming *arguendo* that White had authority to hire, or fail to hire Plaintiff, still no genuine issue of material fact supports Count IX.

### 1. First Amendment

■ When a plaintiff sues under section 1983 claiming that she was retaliated against for exercising her First Amendment right of free speech by complaining about sexual harassment, that plaintiff must satisfy the four-part test set forth in *Morgan v. Ford,* 6 F.3d 750 (11th Cir. 1993). First, the plaintiff's speech must be "'fairly characterized as constituting speech on a matter of public concern.'" *Id.* at 754 (citations omitted). A public concern is marked by the plaintiff's purpose in speaking on behalf of the public instead of for herself as an employee. *See id.* Public concerns involve issues of "'political, social, or other concern to the community.'" *Id.* (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Plaintiff fails to satisfy this first element of the *Morgan v. Ford* test.

Much like the plaintiff in *Morgan v. Ford,* Plaintiff in the instant case fails to show that her complaints constitute speech regarding a matter of public concern. While the violation of law, including laws against sexual harassment, most certainly can be issues of public concern, Plaintiff does not show that her complaints were directed to that public concern. Although not dispositive of the issue, Plaintiff announced her allegations of sexual harass-

---

12. To be clear, Plaintiff does not bring a Title VII retaliation cause of action in Count IX. Rather, section 1983 is the basis for this claim.

ment on August 25, 1997 to certain County employees, not to the public. *But see Gonzalez v. Lee County Hous. Auth.*, 161 F.3d 1290, 1296 (11th Cir.1998) (noting that a public concern may be evidenced even where employee spoke only within the workplace about a matter of public interest) (citing *Connick v. Myers*, 461 U.S. 138, 149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). More critically,. however, Plaintiff offers no evidence that she was prompted to make her complaints on August 25, 1997, in order to make a public issue of sexual harassment. In point of fact, Plaintiff made her complaint after her work hours were reduced and her speech "focused upon how [the Defendants] behaved toward her and how that conduct affected her work." *Morgan*, 6 F.3d at 754.

After five years of enduring Jones and Godwin's vile treatment, Plaintiff was finally driven to tell Pamela Payne and Defendant White about these events because of her "rational self-interest in improving the conditions of her employment," *id.*, and not out of a sense of public responsibility. While Plaintiff most certainly should not be faulted for acting out of self-interest under the circumstances, the absence of any evidence that Plaintiff spoke out about the harassment on behalf of the public rather than herself undermines her section 1983 premised on a First Amendment violation. Accordingly, summary judgment is appropriate.

### 2. Fourteenth Amendment

■ Plaintiff also sues White in Count IX for violating Plaintiff's Fourteenth Amendment rights to equal protection. The right to be free from sexual harassment falls within the protections afforded by the Fourteenth Amendment's Equal Protection Clause. *See Cross v. State of Alabama*, 49 F.3d 1490, 1507 (11th Cir. 1995). However, Plaintiff does not present a genuine issue of material fact to support Count IX's allegation that White violated Plaintiff's right to equal protection by retaliating against her for complaining about sexual harassment. White's qualified immunity insulates him from suit.

The doctrine of qualified immunity "protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "When state officials are sued in their individual capacities, the application of qualified immunity to their actions is the rule rather than the exception...." *Braddy v. Florida Dept. of Labor and Employment Sec.*, 133 F.3d 797, 801 (11th Cir.1998).

The Eleventh Circuit's qualified immunity analysis proceeds as follows. As a preliminary issue, "the defendant government official must prove that he was acting within the scope of his discretionary authority when the alleged wrongful act[s] occurred." *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir.1997). White asserts that he satisfies this threshold requirement because his alleged actions were "taken in his capacity as an official with Dade County...." *See* Defendant David White's Motion For Summary Judgment And Incorporated Memorandum Of Law at 9–10. Plaintiff does not contest this assertion.

Satisfied that White has fulfilled this initial requirement, the Court must next apply the standard test for qualified immunity. First, the Court must decide whether the plaintiff has alleged a deprivation of a constitutional right. *See Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (citing *Siegert v. Gilley,* 500 U.S. 226, 232–33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)); *see also Hartley v. Parnell,* 193 F.3d at 1268 (framing the first prong of qualified immunity analysis as whether the facts, read in the light most favorable to the non-moving party, establish that the defendant's actions deprived the plaintiff of any statutory or constitutional rights). If the plaintiff has not alleged a deprivation of a federal statutory or constitutional right, the qualified immunity inquiry is resolved in favor of the defendant. *See Crosby v. Paulk,* 187 F.3d 1339, 1352 (11th Cir.1999) (citation omitted). However, if the plaintiff does allege a federal statutory or constitutional deprivation, the analysis then proceeds to the second prong of qualified immunity analysis—whether the federal statutory or constitutional right was clearly established at the time of the alleged violation. *See Conn,* 526 U.S. at 290, 119 S.Ct. 1292.

Because Plaintiff alleges that White deprived her of her Fourteenth Amendment right to equal protection, Plaintiff has satisfied the first prong of vitiating White's qualified immunity defense. *See Cross,* 49 F.3d at 1507. However, "no clearly established right exists under the equal protection clause to be free from retaliation." *Ratliff v. DeKalb County, Georgia,* 62 F.3d 338, 340 (11th Cir.1995).[13] Therefore, White's qualified immunity is preserved and summary judgment is **granted.**

## II. Defendants Godwin and Jones's Motion for Summary Judgment

Jones and Godwin move for summary judgment on two of the five claims against them:[14] Plaintiff sues Godwin under section 1983 in Count VII; she sues Jones under section 1983 in Count VIII. These claims are premised on Jones and Godwin each having deprived Plaintiff "of her federally protected rights guaranteed by the First and Fourteenth Amendment[s] to the United States Constitution, by denying her a permanent position with the County and violating her right to be free of sexual harassment and sexual assault and retaliation in the workplace." Second Amended Complaint at ¶¶ 91, 96. Plaintiff also alleges national origin discrimination against both Jones and Godwin. *See* Second Amended Complaint at ¶¶ 93(D) and (E), 98(D) and (E).

---

**13.** Furthermore, even if retaliation claims under section 1983 could destroy qualified immunity, White would still remain entitled to summary judgment on Count IX. Qualified immunity shields a defendant from suit under section 1983 claim based on an alleged violation of equal protection unless the plaintiff can show the defendant's intent to discriminate. *See Mencer v. Hammonds,* 134 F.3d 1066, 1070 (11th Cir.1998), *cert. denied,* 525 U.S. 982, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998) (noting the intent requirement established for equal protection violations in *Washington v. Davis,* 426 U.S. 229, 239–44, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). In the instant case, Plaintiff failed to argue in any way that White had a discriminatory purpose in allegedly violating her Fourteenth Amendment equal protection. *See, e.g., Buzzi v. Gomez,* 24 F.Supp.2d 1352, 1363 (S.D.Fla.1998).

**14.** Jones and Godwin do not move for summary judgment on the state law claims brought against them as individuals in Counts XIV and XVI. However, they jointly seek a Judgment on the Pleadings as to Count XV, brought against them together. *See* Part IV, *infra.*

## A. Unavailable Bases for Section 1983 Suit

Initially, the Court can easily dispose of several bases upon which Plaintiff premises Counts VII and VIII. First, although not presented with precision, Plaintiff appears to allege that both Jones and Godwin violated section 1983 by retaliating against Plaintiff, in violation of the First Amendment, after Plaintiff complained about the abuse to which they subjected her. This retaliation allegedly took the form of refusing to hire her for a permanent position with County. *See* Second Amended Complaint at ¶¶ 91, 96. For the same reasons as discussed in Part I.B.1, *infra*, Plaintiff fails to establish that her complaints about Jones and Godwin's abuse was speech "on a matter of public concern" sufficient to sustain this type of claim. *See Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir.1993) (citations omitted). Thus, summary judgment is appropriate in Count VII and Count VII, at least as to Plaintiff's First Amendment allegations.

Second, Plaintiff asserts several bases upon which to rest her Fourteenth Amendment claims in these section 1983 actions. Plaintiff claims that Jones and Godwin each retaliated against her by reducing the available hours for her to work and by failing to hire her for a permanent position with County, in violation of the Fourteenth Amendment's Equal Protection Clause. *See* Plaintiff's Statement of Material Facts in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, at ¶ 4. However, "no established right exists under the equal protection clause to be free from retaliation." *Ratliff*, 62 F.3d at 340; *see*

*also* Part I.B.2, *infra*. For this reason, Plaintiff's section 1983 claims premised on Fourteenth Amendment retaliation arguments do not survive summary judgment.

Third, to the extent that Plaintiff specified Title VII as an additional basis underlying Counts VII and VIII, *see* Plaintiff's Memorandum of Law and Supporting Affidavits, Depositions and Exhibits in Opposition to Defendants, Donald Godwin and Lem Jones, Motion for Summary Judgment ("Plaintiff's Memorandum"), at 5, summary judgment is appropriate. Title VII suits may not be brought against defendants in their individual capacities. *See Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir.1995) (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)). Because Plaintiff sues Jones and Godwin as individuals, insofar as these section 1983 claims are premised on alleged violations of Title VII,[15] summary judgment is **granted.**

Fourth, Plaintiff's allegation in Count VII that Godwin is sued under section 1983 not only for the abuse he perpetrated, but also for the behavior that Jones committed, is not an issue about which Plaintiff has presented a genuine issue of material fact. Plaintiff neither presents evidence that Godwin was Jones's supervisor at County, nor does Plaintiff present any evidence whatsoever to satisfy the *Brown v. Crawford* requirements for section 1983 supervisory liability, if indeed a genuine issue of material fact existed to show that Godwin was Jones's supervisor at any time relevant to this litigation. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990); *see also* Part I.A., *infra*.

At this juncture, then, Counts VII and VIII may be colorable only insofar as they

---

15. Because these Title VII claims are not colorable, the Court need not discuss the question of whether Plaintiff should have explicitly pled the Title VII basis of Counts VII and VIII in her Second Amended Complaint.

allege section 1983 causes of action based on Fourteenth Amendment equal protection allegations against Jones and Godwin for their commission of sexual harassment and national origin discrimination. Both Jones and Godwin assert the defense of qualified immunity as well as the argument that they did not act under color of law.

## B. Section 1983 and the Fourteenth Amendment's Equal Protection Clause

Pursuant to the *Gomez* test, discussed in Part I.A., *infra*, a section 1983 claim may survive summary judgment if the plaintiff presents a genuine issue of material fact regarding a defendant, who under color of law, deprived the plaintiff of a federal right. *See Gomez*, 446 U.S. at 640, 100 S.Ct. 1920; *see also* Fed.R.Civ.P. 56(c) (providing standard required to defeat summary judgment). While Jones and Godwin do not contest that they may have deprived Plaintiff of her federal rights under the Fourteenth Amendment's Equal Protection Clause, they do contend that summary judgment is nonetheless appro-

priate as their actions against Plaintiff were not made under color of law. The Court agrees with Jones and Godwin that their actions, taken in the light most favorable to Plaintiff, do not constitute actions taken under color of law.

### 1. Prong one: Deprivation of a federal right

Plaintiff asserts that Jones and Godwin discriminated against her on the bases of sex and national origin in violation of the Fourteenth Amendment's Equal Protection Clause.[16] *See* Plaintiff's Statement Of Material Facts In Support Of Plaintiff's Memorandum Of Law in Opposition To Defendants' Motions For Summary Judgment at ¶ 3; Plaintiff's Memorandum at 5. Jones and Godwin do not challenge Counts VII and VIII insofar as the section 1983 claims are premised on allegations that Jones and Godwin deprived Plaintiff of a federal constitutional right under the Fourteenth Amendment.

### 2. Prong two: Color of law

As Jones and Godwin do not challenge that Plaintiff satisfies the first prong of the

---

16. The right to be free from sexual harassment falls within the protections afforded by the Fourteenth Amendment's guarantee of equal protection. *See Cross v. State of Alabama*, 49 F.3d 1490, 1507 (11th Cir.1995); *Nicholson v. Georgia Dept. of Human Resources*, 918 F.2d 145, 148 (11th Cir.1990) ("For a considerable time now, the law has been quite clear that such government action that discriminates on the basis of sex is unconstitutional" under the Equal Protection Clause.) (citations omitted).

Plaintiff's national origin discrimination claim appears to hinge on her Haitian national origin as well as the fact that she is a Creole speaker and "does not speak fluent English." *See* Plaintiff's Memorandum of Law and Supporting Affidavits, Deposition and Exhibits in Opposition to Defendants, Donald Godwin and Lem Jones, Motion for Summary Judgment, at 7. The Eleventh Circuit recently noted that the United States Su-

preme Court "never has held that language may serve as a proxy for national origin for equal protection analysis." *Sandoval v. Hagan*, 197 F.3d 484, 509 n. 26 (11th Cir.1999) (refusing to reach the issue, but noting other contexts in which language may well be considered a proxy for national origin). Nevertheless, this Circuit clearly recognizes that the Equal Protection Clause has long been held to prohibit discrimination on the basis of, *inter alia*, national origin. *See Castaneda v. Pickard*, 648 F.2d 989, 999 (5th Cir., Unit A, 1981). Plaintiff argues that her Haitian national origin was implicated when Godwin called Plaintiff a "Haitian dumb" as he forced sexual relations on her. *See* Deposition of Samedi, Volume II at p. 117, *l.* 25. In addition, Plaintiff asserts that one of the workers at County related to her that Jones had referred to Plaintiff as a "fucking Haitian." *See* Deposition of Samedi, Volume II at p. 100, *l.* 5.

*Gomez* inquiry for bringing a section 1983 suit, the Court now turns its attention to the second prong of the test—whether Jones and Godwin acted under color of law when they allegedly deprived Plaintiff of her Fourteenth Amendment rights. *See Almand,* 103 F.3d at 1513–14 (noting that color of law inquiry is a question of law). Jones and Godwin argue that even if they violated Plaintiff's equal protection, they did not act under color of law when they did so. Without evidence that Jones and Godwin acted under color of law, these section 1983 claims fail. *See Gomez,* 446 U.S. at 640, 100 S.Ct. 1920.

■ In order to bring a claim under the Fourteenth Amendment's Equal Protection Clause, the defendants' behavior must be construed as state action. *See* U.S. Const., art. XIV, § 1 (*"nor shall any State* ... deny to any person within its jurisdiction the equal protection of the laws.") (emphasis added); *Civil Rights Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883) (ruling that under the Fourteenth Amendment, it is "state action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the amendment."). The concept of state action under the Fourteenth Amendment is usually "coterminous" with the color of law inquiry in section 1983 suits. *See Almand,* 103 F.3d at 1514 n. 7 (describing "the concepts of action under color of state law and state action" as "coterminous"); Erwin Chemerinsky, *State Action,* Practicing Law Institute Litigation and Administrative Practice Court Handbook Series, Litigation, PLI Order No. H0–0044, at 185 (1999) ("The test for under 'color of law' under § 1983 is the same as the test for state action"). That is, the state action element that must exist under prong one of the *Gomez* test is identical to the color of law element required under prong two of the *Gomez* test. *Cf. Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (noting that not all color of law conduct for section 1983 purposes satisfies the state action requirement of the Fourteenth Amendment); *but see Almand,* 103 F.3d at 1514 n. 7 (explaining that the distinction between color of law and state action discussed in *Lugar* applies when a private person, not a state actor, applies a state statute).

As Jones and Godwin did not seek summary judgment on the basis that Plaintiff presents no genuine issue of material fact as to the first prong of the *Gomez* test, they implicitly have not challenged the state action element that is required in all Fourteenth Amendment equal protection claims. Moreover, proof of a defendant's state action in prong one of the *Gomez* test satisfies the requisite showing for color of law under prong two of the *Gomez* test. *See Almand,* 103 F.3d at 1514 n. 7. However, by asserting that no genuine issue of material fact exists to show that they acted under color of law when they violated Plaintiff's equal protection, Jones and Godwin indirectly challenge Plaintiff's satisfaction of the first prong of the *Gomez* test relating to state action, as well. As Jones and Godwin directly assail the second prong of the *Gomez* test, the Court now examines whether Plaintiff made a sufficient showing that Jones and Godwin acted under color of state law when they committed sexual acts upon Plaintiff.

■ The Supreme Court has defined the color of law requirement in section 1983 as "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law...." *United States*

*v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). One "acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Almand*, 103 F.3d at 1513. Jones and Godwin concede that they are state employees.[17] However, the parties dispute whether, as a matter of law, Jones and Godwin possessed any authority over Plaintiff sufficient to sustain Counts VII and VIII.

■ One point requires clarification at this time. Jones and Godwin contend that they had no authority, either apparent or actual, to hire or fire Plaintiff. In this way, they argue that their actions against Plaintiff were not committed under color of law.[18] However, Jones and Godwin conceive of the asserted authority too narrowly. The relevant scope of Jones and Godwin's authority over Plaintiff is not whether they could hire or fire her, but rather, whether they wielded "considerable control over a subordinate [to wit, Plaintiff] whose work [they] regularly supervise[ ], even if [they do] not hire, fire, or issue regular evaluations of her work." *Bonenberger*, 132 F.3d at 23 (overruling district court's finding that color of law requirement was not met where defendant had no authority to hire, fire, or make any employment decision regarding plaintiff).

■ Only those actions that a state employee undertakes "pursuant to the power he/she possessed by state authority" may be deemed acts under color of law for the purposes of section 1983. *See Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir.1995). Otherwise, such actions are attributable to the state actor as a private individual. *See id.* The Eleventh Circuit has not explicitly ruled that the power "possessed by state authority" must be actual authority, as opposed to apparent authority. Apparent authority, as defined by the Restatement 2d (Agency) § 219(2)(d), requires that a victim's conclusions are "reasonable" as to the ostensible superior's authority over the victim. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759–60, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (discussing federal approach to apparent authority in context of employers' vicarious liability under Title VII); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (alluding to apparent authority in color of law analysis under section 1983). Several circuits have found that a defendant's authority required to sustain a claim under section 1983 may be either actual or apparent. *See, e.g., United States v. Causey*, 185 F.3d 407, 424 (5th Cir.1999) (DeMoss, J., concurring in part and dissenting in part) (noting that the color of law inquiry is "traditionally rooted in some assertion of actual or apparent official authority"); *Zambrana–Marrero v. Suarez–Cruz*, 172 F.3d 122, 125 (1st Cir. 1999) (recognizing actual or apparent au-

---

**17.** This stipulation is not dispositive, as nonstate employees may be deemed to have acted under color of law for purposes of section 1983 when they are clothed with the authority of state law, and even if they seek purely personal gain via the actions they undertake under color of law. *See Brown v. Miller, et. al.*, 631 F.2d 408, 411 (5th Cir.1980) (citing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds by Monell v. Dept. of Social Servs.*,

436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

**18.** As to this point, Godwin and Jones present evidence which Plaintiff does not rebut, that Godwin, Jones, and White "do not have the authority to hire and fire employees of the Department of Solid Waste." Declaration of Pamela Payne at ¶ 5.

thority as basis for color of law under section 1983); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 23 (3d Cir.1997) (implicitly recognizing apparent authority as sufficient to establish defendant acting under color of law); *David v. City and County of Denver*, 101 F.3d 1344, 1353 (10th Cir.1996) (articulating color of law test as one of defendant's actual or apparent authority, coupled with a " 'real nexus' " between defendant's act and his " 'badge' of state authority") (citations omitted); *Jojola v. Chavez*, 55 F.3d 488, 492–93 (10th Cir.1995) (stating explicitly that "authority with which the defendant is allegedly 'clothed' may be either actual or apparent").

██ In the absence of binding case law to the contrary, this Court proceeds under the assumption that a defendant's apparent authority over a plaintiff may be sufficient to show that the defendant acted under color of law for purposes of a section 1983 suit. However, the parties disagree about whether Plaintiff's subjective belief that Jones and Godwin were her supervisors is sufficient to establish that Jones and Godwin acted under color of law when they harassed Plaintiff.

Plaintiff believed that Godwin and Jones were supervisors who had authority over her continuing employment at County. Godwin and Jones told Plaintiff that they were her supervisors, with control over her work situation. They also told Plaintiff that they could have sex with her because they were her bosses. Plaintiff understood that she would be fired, or denied a permanent job with County, if she did not permit the sexual activity. *See, e.g.*, Deposition of Samedi, Vol. I at p. 51, *l.* 25; Vol. I at p. 65, *l.* 18–20; Vol. I at p. 66, *l.* 4., Vol. II at p. 108, *l.* 1, Vol. II at p. 117, *l.* 22–23. Plaintiff felt that she had to submit to the continuing harassment because she wanted to continue working at County. Nonetheless, the Court is not aware of any precedent holding that a plaintiff's subjective belief as to a defendant's authority, without more, is sufficient to establish that the defendant acted under color of law under section 1983. *See Zambrana–Marrero*, 172 F.3d at 126 ("Although the subjective reactions of the [plaintiff] may have some relevance, 'the primary focus of the color of law analysis must be on the conduct' " of the defendant) (quoting *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 47 (1st Cir.1999)).

Furthermore, Godwin and Jones argue that not only is Plaintiff's subjective belief about their authority over her irrelevant to the color of law issue, but also that Jones and Godwin's own representations about their authority over Plaintiff fails to establish that Jones and Godwin acted under color of law when they violated Plaintiff's Fourteenth Amendment rights. Rather, Jones and Godwin argue, and the Court agrees, that a showing of apparent authority sufficient to satisfy the color of law element of section 1983 is established only if the state actor's employer vests such authority in that state employee. No authority posits that a defendant's own articulation of his putative authority is sufficient to show that he possesses state authority sufficient to infer actions taken under color of law. Indeed, this point is easily inferred from the case upon which Plaintiff relies most heavily in opposing Jones and Godwin's motion for summary judgment.

In *Bonenberger v. Plymouth Township*, 132 F.3d 20 (3d Cir.1997), plaintiff was a police officer who sued, *inter alia*, a police sergeant under section 1983 to remedy allegations of sexual harassment. The

Third Circuit found that the sergeant was not plaintiff's official supervisor, nor did he have authority to hire or fire the plaintiff. However, the court ruled that the supervisor acted under color of law when he harassed plaintiff because he regularly supervised plaintiff's work by altering her workload, determining when plaintiff could take a break, deciding which tasks plaintiff would perform, and garnering sufficient authority such that plaintiff's refusal to follow his orders would constitute insubordination. *See id.* at 22, 24. In that way, the state held plaintiff out as a supervisor with apparent authority over the plaintiff.

In contrast, Plaintiff does not present evidence that Jones and Godwin possessed similar state authority with respect to Plaintiff. Plaintiff bases her lawsuit against Jones on the assumption that Jones was her boss because "he told me he was the boss, so I worked with him, so I thought he was the boss." Deposition of Samedi, Vol. I at p. 66, l. 4–6. Plaintiff never confirmed that Jones was her supervisor, vested with any authority over her employment. *See id.* at p. 65, l. 21–23; *see id.*, p. 66, l. 25 to p. 67, l. 2 (testifying that Jones was the only person to tell Plaintiff that he was her boss). Plaintiff believed that Jones was her supervisor, and she was induced to withstand his abuse due to her own understanding.

The parties to the instant case do not agree that Jones and Godwin supervised Plaintiff. *Cf. Bonenberger*, 132 F.3d at 22. Here, Plaintiff proffers no evidence that Jones[19] or Godwin[20] had any influence over her work at County. Rather, Plaintiff relies solely upon the legally unsound theory that "Samedi was made to believe by Godwin and Jones that they had the

---

[19]. Plaintiff alleges that Jones possessed supervisory authority in the field by issuing orders to workers such as Plaintiff about when they could go home or work overtime. *See* Plaintiff's Memorandum at 7. Plaintiff cites to her Statement of Material Facts to support this argument. However, upon review of the record, including Plaintiff's Statement of Material Facts in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, the Court finds no substantiation in the form of admissible evidence or "specific facts" to support this statement about Jones's authority over Plaintiff's work hours. *See* Fed.R.Civ.P. 56(e).

[20]. The Court also reviewed the record for potential arguments that Plaintiff could have made in this regard as to Godwin's authority over her. First, the Court notes that Godwin, along with another County employee by the name of Coleman Tyler, routinely watched at the end of the work shift as Plaintiff wrote down in a book the hours that she worked during the day. *See* Declaration of Samedi, Vol. II at p. 97, l. 19–21. However, this action alone does not necessarily create any genuine issue of material fact that Godwin had influence over Plaintiff's work at County.

Second, at times, Godwin drove a County vehicle into the field and told Plaintiff that he had work for her to do elsewhere. Plaintiff would accompany him to the vehicle, where Godwin would force her to perform fellatio on him. *See* Plaintiff's Statement of Material Facts in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment at ¶ 5i. While at first blush, such an incident may appear to establish a genuine issue of material fact about Godwin's authority over Plaintiff, in fact it evidences Plaintiff's own subjective view of Godwin's authority over her based on Godwin's own representations about his authority. Plaintiff presents no evidence that such incidents were more than a ploy to force sex upon Plaintiff. Plaintiff does not offer any evidence that at times when Godwin would instruct her to accompany him to another work site that she would actually engage in work instead of being forced to engage in sex. Accordingly, these situations fail to present a genuine issue of fact that County conferred authority in Godwin to instruct Plaintiff about what work she was to perform.

authority to hire and fire her." *See* Plaintiff's Memorandum at 4. This concise statement of Plaintiff's subjective belief forms the extent of Plaintiff's response to Jones and Godwin's motion for summary judgment on the color of law question. As Plaintiff fails to present a genuine issue of material fact that Jones and Godwin possessed any authority—be it actual or apparent—over Plaintiff's work, the color of law requirement of section 1983 is not satisfied as a matter of law. *See Gomez,* 446 U.S. at 640, 100 S.Ct. 1920. Summary judgment is therefore **granted** on Counts VII and VIII and the Court need not evaluate Jones and Godwin's claims of qualified immunity.

## III. *Defendant Miami–Dade County's Motion for Summary Judgment*

County seeks summary judgment on each of the nine counts brought against it. Section A of this Part of the opinion evaluates the *Faragher* affirmative defense that County asserts as to Counts I, II, and X. Section B deals with County's argument that evidence regarding Defendant Jones's harassment of Plaintiff is time-barred as it relates to all Title VII counts against County. Section C addresses County's argument that Plaintiff's claims of retaliation, in Counts III and X, are subject to

summary judgment because County had legitimate, non-discriminatory reasons for not hiring her and because Plaintiff fails to demonstrate that County's reasons .were pretextual. Section D is concerned with County's motion for summary judgment on the grounds that Plaintiff fails to show any genuine issue of material fact to sustain Plaintiff's claims in Counts IV and V of 42 U.S.C. § 1983 municipal liability. Section E takes up County's assertion that no evidence exists to show that County knew or should have known of Jones and Godwin's dangerous propensities such that Counts XI and XII are subject to summary judgment. Finally, Section F decides County's motion for summary judgment on the basis that Count XIII is barred by County's sovereign immunity.

### A. *Faragher* Affirmative Defense

■ County moves for summary judgment on Counts I, II, and X [21] based on its assertion of the so-called *"Faragher* affirmative defense"* to Title VII liability for an employer "when discriminatory misuse of supervisory authority alters the terms and conditions of a victim's employment. . . ." *Faragher v. City of Boca Raton,* 524 U.S. 775, 803, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).[22] An employer [23] may successfully assert the *Faragher* affirmative defense only "[w]hen no tangible employment ac-

---

**21.** Count I is a Title VII hostile work environment claim; Count II asserts a Title VII quid pro quo claim; and Count X is brought under the Florida Human Rights Act, Fla.Stat. § 760.01 et. seq. "Because the Florida Human Rights Act is patterned after Title VII, federal case law dealing with Title VII also applies to the Florida Human Rights Act." *Kelly v. K.D. Constr. of Florida, Inc.,* 866 F.Supp. 1406, 1411 (S.D.Fla.1994) (citing *Brand v. Florida Power Corp.,* 633 So.2d 504, 507 (Fla. 1st DCA 1994)) (approving application of *McDonnell Douglas–Burdine* test to Florida's Human Rights Act); *see also Dudley v. Metro–Dade County,* 989 F.Supp. 1192, 1204–05 (S.D.Fla.1997).

**22.** This affirmative defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 807, 118 S.Ct. 2275.

**23.** Title VII, 42 U.S.C. § 2000e et seq., addresses itself to the unlawful employment practices of employers. *See, e.g.,* 42 U.S.C. § 2000e(b) (defining "employer" for purposes of Title VII); 42 U.S.C. § 2000e–2 (making it unlawful for an "employer" to discriminate

tion is taken" against the Title VII plaintiff. *Id.* at 807, 118 S.Ct. 2275.

While County makes sound arguments regarding the elements of the *Faragher* affirmative defense, it entirely fails to address the preliminary question of whether or not a genuine issue of material fact exists as to any tangible employment actions taken against Plaintiff at County. *Cf. Madray v. Publix Supermarkets, Inc.,* 208 F.3d 1290, 1296 (11th Cir.2000) (reiterating requirement that a "victimized employee suffered no adverse tangible employment action" in order for employer to assert the *Faragher* affirmative defense); *Dees v. Johnson Controls World Services, Inc.,* 168 F.3d 417, 422 (11th Cir.1999) ("When no such tangible employment action occurs ... the employer's vicarious liability [for the acts of supervisory employees under Title VII] is subject to a two-part affirmative defense" provided for in *Faragher* ); *Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1367 (11th Cir.1999) (Barkett, J., concurring specially) (highlighting the condition that no tangible employment action was taken against a Title VII plaintiff if a defending employer asserts the *Faragher* affirmative defense). As County possesses the burden on summary judgment, its failure to present any evidence that Plaintiff was not subject to a tangible employment action at County precludes the Court's consideration of County's *Faragher* affirmative defense. Summary judgment is therefore **denied** as to Counts I, II, and X.

### B. Time-barred Claims Involving Jones

 Although Counts I, II, and X survive summary judgment as far as the *Far-*

*agher* affirmative defense is concerned, Defendant is correct to argue that these claims concerning Jones's behavior vis-a-vis Plaintiff are time-barred. In order to bring a Title VII lawsuit in federal court, a plaintiff must first timely file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), or with the relevant state or local agency that oversees the processing of such charges. *See* 42 U.S.C. § 2000e–5(e)(1); *Forehand v. Florida State Hosp.,* 89 F.3d 1562, 1567 (11th Cir.1996) (explicating condition precedent of filing charge of discrimination before Title VII lawsuit may be filed in federal court). A Title VII lawsuit may assert only those allegations of discrimination or unlawful employment practices that occur within a statutorily specified period of time prior to the filing of a charge of discrimination. When a plaintiff files a charge of discrimination with the EEOC, that statute of limitations is one-hundred eighty (180) days. *See* 42 U.S.C. § 2000e–5(e)(1). However, when a claimant "has instituted proceedings with a State or local agency with the authority to grant or seek relief" from the charge of discrimination, the statute of limitations is extended to three-hundred (300) days. *See id.; see also Cardin v. Via Tropical Fruits, Inc.,* No. 88–14201–CIV–MARCUS, *available at* 1993 WL 945324, at *17 (S.D.Fla. July 9, 1993).

In the instant case, Plaintiff filed a charge of discrimination with both the Metro Dade Equal Opportunity Board and the EEOC on September 8, 1997. *See* Exhibit A to Second Amended Complaint.

---

against an "employee" on the basis of an individual's race, color, religion, sex, or national origin). Plaintiff worked for County as a temporary employee and had never been hired as a County employee. Nevertheless, County does not dispute Plaintiff's contention

that County acted as Plaintiff's employer, at least with respect to liability under Title VII. *See generally Lyes v. City of Riviera Beach,* 166 F.3d 1332, 1341 (11th Cir.1999) (discussing "liberal construction to the term 'employer' under Title VII.") (citations omitted).

Plaintiff later received a right to sue letter, which permitted her to file the instant case. *See* Exhibit B to Second Amended Complaint. Accordingly, Plaintiff may allege incidents of discrimination or other unlawful employment practices that occurred in the 300 days preceding September 8, 1997. However, no genuine issue of material fact exists to show that Jones harassed Plaintiff in the 300 days preceding Plaintiff's filing of a charge of discrimination on September 8, 1997. Plaintiff testified at deposition that she stopped working with Jones in 1996, *see* Deposition of Samedi, Vol. II at p. 91, *l.* 8–9, she did not work for him for a year thereafter, *see id.*, Vol. II at p. 102, *l.* 1–3, and once she resumed working with him in July 1997, she did not have sexual relations with him. *See id.*, Vol. II at p. 105, *l.* 11–22. Therefore, Plaintiff's last sexual incident involving Jones had to have occurred no later than July 1996, which is more than 300 days before Plaintiff filed her charge of discrimination. Thus, all allegations of Jones's harassment of Samedi are **time-barred** pursuant to 42 U.S.C. § 2000e–5(e)(1).

### C. Retaliation and Failure to Hire

County seeks summary judgment on Counts III and X[24] by arguing that Plaintiff fails to establish a prima facie case of discrimination. Even if Plaintiff makes a prima facie case, County states that it had legitimate, non-discriminatory reasons for not hiring Plaintiff to a permanent position at County, and that Plaintiff did not make a showing that County's reasons for not hiring Plaintiff were pretextual. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (establishing the rule of burden-shifting in Title VII cases that involve circumstantial evidence of discrimination).

### 1. Retaliation

 Plaintiff appears to allege in Counts III and X both Title VII retaliation and Title VII discrimination for failure to hire. A prima facie case of retaliation under Title VII requires that the Plaintiff establish the following elements: (1) plaintiff was engaged in an activity protected by Title VII; (2) plaintiff was disadvantaged by an action of her employer that occurred either simultaneous with or subsequent to such activity; and (3) a causal connection exists between the protected activity and the employer's adverse action. *See Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir.1992). In the instant case, County does not dispute that it is Plaintiff's employer, although County never hired Plaintiff as an employee, but rather, County provided Plaintiff with work to do for which a temporary agency compensated Plaintiff.

Assuming then, that County is Plaintiff's employer, Plaintiff still fails to establish a prima facie case of Title VII retaliation. Plaintiff did engage in statutorily protected expression when she filed her charge of discrimination on September 8, 1997, as well as when she complained to Defendant White and Ms. Payne on August 25, 1997 about Jones and Godwin's harassment of her. *See Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir.1997) (discussing first ele-

---

**24.** Plaintiff describes Count III as "Title VII Sexual Harassment and Sexual Assault Retaliation", *see* "Second Amended Complaint at ¶¶ 60–70;" Count X is brought under Fla.Stat. § 760.01 et. seq., *see id.* at ¶ 111(B) ("that

Samedi be promoted to a position consistent with the time [sic] she was intentionally delayed to a permanent position due to the unlawful conduct administered by Godwin, Jones, White, and the County").

ment of Title VII retaliation prima facie case). However, Plaintiff fails to provide a genuine issue of material fact to explain how she suffered an adverse employment action after August 25, 1997. An adverse employment action "as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." *McCabe v. Sharrett, Jr.*, 12 F.3d 1558, 1563 (11th Cir.1994) (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). No evidence was offered to establish that Plaintiff had applied for a job with the County on or after she first engaged in statutorily protected activity on August 25, 1997. Neither was evidence adduced to show that the Waste Attendant I position, for which Plaintiff was interviewed in March of 1997, was still available on or after August 25, 1997. Finally, Plaintiff fails to produce any evidence to show that she had applied for any position other than the Waste Attendant I job for which she was interviewed in March 1997. In these ways, to the extent that Counts III and X assert Title VII retaliation, summary judgment is **granted.**

### 2. Failure to Hire

Plaintiff more explicitly seems to claim that County discriminated against her in violation of Title VII, on the basis of her Haitian national origin, by failing to hire her to a permanent County job. Title VII provides, in pertinent part, as follows: "It shall be an unlawful employment practice for an employer ... to fail or refuse to hire ... any individual ... because of such individual's race, color, religion, sex, or *national origin* ... " 42 U.S.C. § 2000e–2(a)(1) (emphasis added); *see also Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 645, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (quoting 42 U.S.C. § 2000e–2(a) and

applying the provision to a disparate-impact situation); *Reynolds v. G.M. Roberts*, 202 F.3d 1303, 1319 n. 27, *reh'g denied*, 213 F.3d 650 (11th Cir.2000) (discussing Title VII failure to hire cases in the context of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

### a. Prima Facie Case

A failure to hire case under Title VII may be established if a plaintiff first establishes a prima facie case comprised of the following elements: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for, and applied for, a job; (3) defendant/employer rejected plaintiff for that job; and (4) other equally or less qualified people who were not members of the protected class were hired for that position. *See Passmore v. Kindercare Learning Ctrs., Inc.*, 979 F.Supp. 1413, 1417–18 (M.D.Ala.1997) (applying elements of failure to promote prima facie case to context of failure to hire, and citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n. 11 (11th Cir.1997)); *see also Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988) (setting forth prima facie case for failure to promote under Title VII).

County takes issue with the second element of the prima facie test— whether or not Plaintiff was qualified for the Waste Attendant I position at County. Three aspects in particular warrant concern regarding Plaintiff's qualifications for the job. First, the job description for a Waste Attendant I describes "completion of the eighth school grade" as part of the "desirable experience and training" for the position. *See* Exhibit I to Declaration of Cecilia Brewer. However, as this educational component is presented in the job description as "desirable" rather than "re-

quired," the fact that Plaintiff has completed only four years of schooling does not doom her claim.

Second, and more significantly, the Waste Attendant I job description lists among "illustrative tasks" for the position the following: "Instructs citizens in backing up their vehicles in order to dump their trash;" and "Informs the public as to the procedures for dumping at the trash transfer stations both orally and through the use of instruction pamphlets." *See id.* Plaintiff is not able to read very much in Creole, the only language which she speaks. *See* Deposition of Samedi, Vol. I at p. 15, *l.* 25 to p. 16, *l.* 3. As no evidence has been presented regarding whether literacy, in any language, is required for use of instruction pamphlets (as the pamphlets may be entirely illustrated, for instance), the Court attributes no significant weight to this point. However, as is clear from her own admissions, *see id.,* Vol. I at p. 16, *l.* 6–8, Plaintiff speaks only Creole. As the job description is written in English, the Court deduces that a Waste Attendant I is required to communicate verbally in English, which Plaintiff cannot do. Additionally, the record does not show any evidence that the public with whom a Waste Attendant I would interact speaks Creole.

Third, and related to the prior point, Plaintiff did not come across well during her Waste Attendant I interview on March, 10, 1997. This is reflected in several of the Interview Rating Forms which panel members filled out during or after Plaintiff's interview. *See* Exhibit 5 to Declaration of Cecilia Brewer. One interviewer made a handwritten note on the form indicating that Plaintiff "could not understand Eng[lish]." *See id.* Under the form's rubric for interpersonal skills and judgment, another panel member noted that Plaintiff was "not understanding."

*See id.* Yet another interviewer made the handwritten notation, "No English, very little." *See id.*

Plaintiff contends that she is qualified for the Waste Attendant I position because she has performed all of the duties and responsibilities of that job. *See* Plaintiff's Memorandum at ¶ 13. Although this qualification requirement of the prima facie case "is not particularly rigorous," *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1239 (11th Cir.2000), Plaintiff does not present any evidence to bolster her claim that she is qualified to be a Waste Attendant I. She does not present evidence that she performed all of the duties described in the job description, especially in light of County's concerns about Plaintiff's lack of communication skills.

Moreover, Plaintiff contends that the people who interviewed her have not observed her work, only those who harassed her have watched her perform her job, and therefore the evaluation process is flawed. Plaintiff cites no case law relating to claims of invalid hiring practices based on interviewing procedures. Furthermore, Plaintiff's assertion that County's hiring process is flawed appears distinct from, not supportive of, her claim that County failed to hire her due to national origin discrimination. This is so, particularly as Jones and Godwin did not have control over her hiring. *See* Declaration of Pamela Payne at ¶ 5. All in all, despite the fact that "[d]emonstrating a prima facie case is not onerous," *Holifield,* 115 F.3d at 1562, the Court finds that Plaintiff fails to do so, as Plaintiff did not show that she was qualified for the job for which County did not hire her.

**b. Legitimate, Non-discriminatory Reasons**

 Nevertheless, even assuming that Plaintiff satisfies her burden to establish a

prima facie case, summary judgment is still warranted on Counts III and X. Once a prima facie case is established, the way in which evaluation of a Title VII cases proceeds depends upon whether the plaintiff has alleged direct evidence or circumstantial evidence of discrimination. *See Taylor v. Runyon,* 175 F.3d 861, 867 (11th Cir.1999) (defining direct evidence as "evidence, which if believed, proves [the] existence of [the] fact in issue without inference or presumption.") (quoting *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir.1997) (internal citations and quotation omitted)); *Trotter v. Bd. of Trustees. of the Univ. of Alabama,* 91 F.3d 1449, 1453–55 (11th Cir.1996) (explaining that direct evidence of discrimination is shown when decision makers make statements indicating their discriminatory animus). Here, Plaintiff presents no direct evidence that County failed to hire her to a permanent position due to her national origin. Accordingly, the Court's analysis must proceed under the "familiar framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,*" 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for circumstantial cases of Title VII violations.

Assuming that Plaintiff has established a prima facie case, then, Plaintiff has thereby created a presumption of County's discrimination against her. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. At this point, the burden of production falls to County to show legitimate, nondiscriminatory reasons for its decision not to hire Plaintiff. *See Combs,* 106 F.3d at 1528 (citing *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). County's burden at this step in the burden-shifting analysis is " 'exceedingly light.' " *Holifield,* 115 F.3d at 1564 (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994)). County rests its reason for not hiring Plaintiff on the fact that she performed quite poorly at her March 10, 1997, interview. For example, on a rubric of five considerations (work experience/maturity, interpersonal skills, judgment, responsibility for work tools, and attendance & punctuality), which ranged from a low score of "0" to a high score of "5," Plaintiff received a score of "0" from four interviewers on the interpersonal skills component of the interview, while only one panel member gave Plaintiff a "2" in that category. As discussed earlier, several of the interviewers also made handwritten notes about Plaintiff's inability to interact with them in English. As the Waste Attendant I job description values oral/spoken communication skills, and as Plaintiff was unable to communicate effectively at her interview, the Court finds that County presents a legitimate, non-discriminatory reason for failing to hire Plaintiff.[25]

**c. Pretext**

 While a court's rejection of a defendant's proffered legitimate, non-discriminatory reasons for taking an employment action does not compel judgment for the plaintiff, *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742,

---

**25.** Plaintiff does not contend that the County's emphasis on English-speaking skills is per se discriminatory on the basis of national origin. *See also* note 16 (discussing briefly that language may be a proxy for national origin in certain situations). Although not presented with precision, Plaintiff may be arguing that County had a duty to prepare Plaintiff for advancement and/or hiring to a permanent position, ostensibly by teaching her English. Plaintiff offers no support for that proposition.

125 L.Ed.2d 407 (1993), so too, a court's acceptance of those reasons does not compel judgment for the defendant. Rather, the burden shifts once again back to the plaintiff such that she may "be afforded a fair opportunity to show that [the defendant's] stated reason for [plaintiff's] rejection was in fact pretext." *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. That is, the defendant cannot offer its non-discriminatory reasons for not hiring the plaintiff as a " 'pretext for the sort of discrimination prohibited by' " Title VII. *St. Mary's Honor Ctr.,* 509 U.S. at 516 n. 6, 113 S.Ct. 2742 (quoting *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817).

In the instant case, then, Plaintiff must demonstrate by a preponderance of the evidence, *see Armindo v. Padlocker, Inc.,* 71 F.Supp.2d 1238, 1240 (S.D.Fla.1998) (explaining burden on Plaintiff at pretext stage of *McDonnell Douglas* burden-shifting test), that County had a discriminatory intent for failing to hire Plaintiff such that its seemingly legitimate reasons for not hiring her were merely pretext for discrimination. Plaintiff cannot satisfy this burden by making mere conclusory allegations of County's discrimination. *See Young v. General Foods Corp.,* 840 F.2d 825, 830 (11th Cir.1988) (quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987)). When an employer "produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence." *Holifield,* 115 F.3d at 1565.

Here, County presents documentary evidence not of Plaintiff's misconduct nor poor performance, but rather, of her inability to perform the Waste Attendant I position mainly due to her lack of knowledge of English. (Plaintiff's lack of an eighth-grade education and the possibility that she might not be capable of using the instruction pamphlets if they were written in English was also relevant to County's decision). County does not dispute that Plaintiff performed well as a temporary employee. However, no genuine issue of material fact exists to show that Plaintiff's temporary job and the Waste Attendant I job involved the same job demands. In this way, Plaintiff fails to sustain her burden of showing that County's legitimate, non-discriminatory reasons for not hiring her were pretextual. Nor has Plaintiff argued that these reasons "were more likely motivated by a discriminatory reason.…" *Holifield,* 115 F.3d at 1565. Accordingly, summary judgment is granted on Counts III and X.

### D. Section 1983 Claims

Plaintiff sues County in Count IV under 42 U.S.C. § 1983 ("section 1983"), and in Count V for retaliation under section 1983.[26] Summary judgment is **granted** in favor of County on Count V as the Fourteenth Amendment's Equal Protection Clause does not establish a right to be free from retaliation. *See Ratliff v. De-Kalb County,* 62 F.3d 338, 340 (11th Cir. 1995).[27] Furthermore, no genuine issue of material fact exists to show that Plaintiff was retaliated against for exercising her First Amendment rights to speak out publicly about the harassment she allegedly suffered at County. *See Morgan v. Ford,*

---

**26.** *See* Part I.A., *infra,* for text and general discussion of 42 U.S.C. § 1983.

**27.** *See also* Part I.B.2 and Part II.A, *infra.*

6 F.3d 750, 754 (11th Cir.1993).[28]

County moves for summary judgment on Count IV under the theory that no genuine issue of material fact exists as to County's municipal liability under section 1983. In 1978, the United States Supreme Court overruled its earlier decision in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), to the extent that *Monroe* held that local governments ("municipal corporations") were entirely immune from section 1983 suits. *See Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 ...."); *see id.* at 695, 701, 98 S.Ct. 2018 (explicitly overruling *Monroe v. Pape* with respect to municipal liability under section 1983).

While local governmental units such as counties may be liable under section 1983, *see Mandel v. Doe,* 888 F.2d 783 (11th Cir.1989) (upholding directed verdict for plaintiff in section 1983 suit brought against a county); *Bradberry v. Pinellas County,* 789 F.2d 1513, 1515 (11th Cir. 1986) (involving plaintiff's section 1983 suit against county), case law has defined the contours of such liability. Local governments [29] may not be held liable under section 1983 on a respondeat superior theory based exclusively on "the existence of an employer-employee relationship with a

tortfeasor." *See id.* at 691–92, 98 S.Ct. 2018. Rather, section 1983 liability is limited to certain situations in which plaintiff complains of "'acts that are, properly speaking', acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered.'" *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479 (11th Cir.1991) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). A plaintiff may establish a case of municipal liability under section 1983 by following one of several routes, including a showing of a local government's policy, custom or practice, or a failure to train its employees. *See id.* at 1481 ("[I]f plaintiff succeeds in proving a city policy of discrimination based on the actions of a 'final policymaker,' he would have no need to prove in addition a custom or practice of racial discrimination.").

In broad terms, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Case law has further parsed this statement to illustrate how official governmental *policy,* on the one hand, or governmental *custom,* on the other hand, can each create the basis for governmental liability under section 1983. The critical point, regardless of the way in which liability is established, is that a

---

28. *See also* Part I.B.1, *infra.* The Court reads the Second Amended Complaint broadly to infer that Plaintiff did indeed assert retaliation for her exercise of the First Amendment. *See* Second Amended Complaint at ¶ 81 (explicitly claiming Fourteenth Amendment cause of action for retaliation, and asserting "right to be free of retaliation for *complaining*

about sexual harassment and sexual assault in the workplace") (emphasis added).

29. In this opinion, the Court shall loosely use the terms "local governments," "municipalities," and "counties" interchangeably with respect to liability of Defendant County under section 1983.

plaintiff must "demonstrate a direct causal link between a [County] policy or custom and the alleged constitutional deprivations" underlying her section 1983 claim. *Young v. City of Augusta,* 59 F.3d 1160, 1171 (11th Cir.1995).

### 1. Official Policy

 A municipality's official policy "is easily found in cases such as *Monell* where the local government formally makes a decision which when executed gives rise to a constitutional violation." *Arnold v. Bd. of Educ.,* 880 F.2d 305, 315 (11th Cir.1989). When actions challenged in a section 1983 claim were taken pursuant to a policy which "the official or officials responsible under state law for making policy in that area of the [County's] business" promulgated, then section 1983 may be actionable against the governmental entity. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion). An official policy "often refers to formal rules or understandings— often but not always committed to writing—that are intended to, and do, establish fixed plans of action . . ." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Mandel v. Doe,* 888 F.2d 783, 793 (11th Cir.1989) (noting that "relevant positive law, including ordinances, [and] rules and regulations" are part of the determination of county's policy). Only a decision maker vested with final authority to create a policy can open the government to section 1983 municipal liability for government employees' actions taken pursuant to that policy. *See id.* at 481–83, 106 S.Ct. 1292 (plurality opinion); *see also Floyd v. Waiters,* 133 F.3d 786, 794 (11th Cir.1998), *cert. granted, judgment vacated by* 525 U.S. 802, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998) (remanding to Eleventh Circuit on another issue); *on remand to* 171 F.3d 1264 (1999), *cert. denied,* 528 U.S. 891, 120 S.Ct. 215, 145 L.Ed.2d 181 (1999).

This final decision maker may be either someone who has legislative authority, *see Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292 (plurality opinion), or else someone who was delegated final decision making authority such that her " 'edicts or acts may fairly be said to represent official policy.' " *McMillian v. Monroe County,* 520 U.S. 781, 784, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). By applying state law, trial judges identify whether a putative decision maker has "final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or [federal] statutory violation at issue." *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

The official policy of which Plaintiff complains is "County employees' sexually harassing conduct [that] is so widespread and has been so longstanding as to constitute a policy, practice or custom which is endorsed, condoned, accepted and effectively sanctioned by the County." Second Amended Complaint at ¶ 72. Plaintiff's rebuttal to County's motion for summary judgment is that *Defendant White* "did nothing" in the face of Plaintiff's complaints of sexual harassment. *See* Plaintiff's Memorandum of Law and Supporting Affidavits, Depositions and Exhibits in Opposition to Defendant, Miami–Dade County's Motion for Summary Judgment, at ¶ 13. One may put aside for the moment the fact that Plaintiff did not complain to Defendant White until August 25, 1997, about the harassment she had suffered, and that Pamela Payne, the Chief of the Human Resources Division at County's

Department of Solid Waste Management, commenced an investigation into Plaintiff's allegations on that very day. *See* Declaration of Pamela Payne at ¶ 4.

Plaintiff does not dispute County's contention that the Dade County Charter and Code assigns the County Commission and County Manager with exclusive, final, policymaking authority. *See also Lawrence v. Metro Dade County*, 872 F.Supp. 957, 964 (S.D.Fla.1994) (finding no dispute in the record that Dade County Charter authorize the Board of County Commissioners to pass ordinances and resolutions, including rules and regulations concerning county employment); *Gomez v. Metro Dade County*, 801 F.Supp. 674 (S.D.Fla.1992) (same) (involving plaintiff's allegation of discriminatory demotion). Plaintiff would have to present a genuine issue of material fact that White is a final policymaker within County in order to attach municipal liability to County under section 1983. Plaintiff fails to do so, as she presents no evidence on this point. Because the record is devoid of any evidence raising a genuine question that Defendant White was vested with final decision making authority at County, the Court finds that no County policy of harassment exists to sustain Count IV.

## 2. Custom

 If a plaintiff does not demonstrate that a municipality promulgates an official policy that will support a section 1983 claim, she may still sue the municipality under section 1983 if she will be "able to prove that the challenged action was [taken] pursuant to a state 'custom or usage.'" *Pembaur*, 475 U.S. at 481 n. 10, 106 S.Ct. 1292 (plurality opinion):

To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, " 'although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law ...'"

*Brown*, 923 F.2d at 1481 (quoting *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915, which in turn quotes *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). A custom sufficient to sustain municipal liability under section 1983 must be sufficiently " 'widespread,'" and " 'permanent and well settled,'" such that it is " 'deemed authorized by the policymaking officials because they must have known about it but failed to stop it.'" *See Floyd*, 133 F.3d at 795 (quoting *Brown*, 923 F.2d at 1481) (internal quotations and citations omitted).

Plaintiff admits that the County has an "organizational structure" providing for ways in which employees are to report incidences of unlawful conduct, including sexual harassment. *See* Second Amended Complaint at ¶ 73; *see also* Exhibit 1 to Declaration of Pamela Payne (County Administrative Order 7–6: Personnel Policy on Equal Employment Opportunity, effective date March 1, 1972); Exhibit 2 to Declaration of Pamela Payne (Department of Solid Waste Management's Equal Opportunity/Sexual Harassment Procedure No. 301, dated October 25, 1996: "The Department does not discriminate and does not tolerate sexual harassment in the workplace"). Most significantly, County's Sexual Harassment Policy provides for a complaint procedure whereby

Employees who believe they have been the subject of sexual harassment have the right to file a complaint with the County's Affirmative Action Office. Employee may, if they desire, also re-

port such incidents of sexual harassment to their supervisor but are under no obligation to do so prior to filing a complaint. All complaints of sexual harassment will be investigated to determine whether the allegations are well-founded. If the investigations confirm the existence of sexual harassment, the Affirmative Action Office will pursue prompt corrective action, including positive relief for the victim, and appropriate disciplinary action against the offender.

*See* Exhibit 2 to Declaration of Pamela Payne ("Sexual Harassment Policy," Administrative Order No. 7–28, effective November 17, 1986).

Three complaints of sexual harassment within the Solid Waste Department predating Plaintiff's complaint, show that the County Affirmative Action Office had notice of credible sexual harassment complaints. *See* Exhibit J (composite) to Deposition of Juan De Ona. These complaints were filed in 1990 and 1995, and were not lodged against Jones or Godwin.

Despite this evidence that sexual harassment had occurred in the Trash Division before and during Plaintiff's tenure there, White's lack of knowledge of the harassment against Plaintiff, and lack of knowledge as to the identity of the harassers, precludes the possibility that White, standing in the shoes of County, perpetuated a custom or practice of unlawfully permitting the harassment to continue. *See Floyd*, 133 F.3d at 795 (quoting *Brown*, 923 F.2d at 1481). Most dispositive of this matter is the fact that prior to August 25, 1997, Plaintiff did not complain to anyone at County that she was subject to Jones and Godwin's ongoing abuse. Not until September 8, 1997, did Plaintiff file a complaint with County. Plaintiff argues that Defendant White is the policymaking offi-

cial at County who was responsible for permitting Plaintiff to be harassed over a period of five years. However, as the Court found in Part 1, *infra*, no genuine issue of material fact was presented to show that White had, or should have had, knowledge of the harassment prior to August 25, 1997.

Moreover, once Plaintiff made her complaint to Defendant White and to Pamela Payne, Ms. Payne and members of her department "immediately began an investigation, and put Lem Jones and Don Godwin on notice that they were not to come in contact with Ms. Samedi." Declaration of Pamela Payne at ¶ 4. Jones and Godwin were also demoted and removed, if not permanently, from the site where Plaintiff worked. Even if the Court were to assume, *arguendo*, that White is an official policymaker at County, he did not know about the harassment of Plaintiff until August 25, 1997, after which time neither Jones nor Godwin harassed Plaintiff again. Therefore, the Court does not find evidence of a County custom or practice of permitting harassment.

### 3. Failure to Train/Supervise

■ A third road to establishing municipal liability under section 1983 involves a county's failure to train or supervise its employees who committed the torts complained of in the substantive claim underlying the section 1983 claim. *See City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (holding that "there are limited circumstances in which an allegation of a " 'failure to train' " can be the basis for liability under § 1983"). When a failure to train is tantamount to a municipality's "deliberate indifference" to the rights of a section 1983 plaintiff, then the failure can be properly

considered to be the municipality's "policy or custom." *See id.* at 388–89, 109 S.Ct. 1197.

Plaintiff invokes the failure to train argument not to argue that County failed to train its employees about sexual harassment, but rather to assert that County failed to train Plaintiff, who as a temporary employee working at County did not receive County training about sexual harassment awareness and sexual harassment prevention. *See* Plaintiff's Memorandum at ¶ 11. However, the failure to train method of establishing municipal liability under section 1983 looks at a municipality's responsibility to eliminate the chance that its employees will engage in improper conduct that may harm potential section 1983 plaintiffs. *See, e.g., Gold v. City of Miami,* 151 F.3d 1346, 1349 (11th Cir.1998) (discussing failure to train and/or to supervise police officers who allegedly inflict excessive force); *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489–90 (11th Cir.1997) (denying municipal liability under section 1983 where municipality did not train its police officers to avoid "barter[ing] arrests for sexual favors"); *Floyd,* 133 F.3d at 796 ("A pattern of known misconduct, however, may be sufficient to change reasonable reliance into deliberate indifference.") (citation omitted). Plaintiff presents no authority to support the argument that County must train people other than its employees (such as temporary employees). More fatally for Count IV, however, is Plaintiff's failure to support her argument that County's failure to train a *victim,* rather than a perpetrator, of improper conduct falls within the narrow ambit of *City of Canton* and its progeny.

Furthermore, even if County should have trained Plaintiff about sexual harassment, the allegations of sexual abuse of which Plaintiff complains are so egregious, so "clearly against the basic norms of human conduct" that County did not act with deliberate indifference when it did not train her to recognize Jones and Godwin's behavior as not only unlawful under employment law, but as illegal under the criminal law. *See id.* at 796 (holding that no deliberate indifference to train or to supervise security officers was shown where sexual abuse plaintiffs complained of was a crime, and "[w]ithout notice to the contrary, [defendant] was entitled to rely on the common sense of its employees not to engage in wicked and criminal conduct."). Accordingly, the Court holds that County did not act with deliberate indifference in not training Plaintiff, a non-County employee, to recognize that the sexual abuse perpetrated upon her constituted sexual harassment or even rape.

### E. Negligent Supervision and Negligent Retention under Florida law

County moves for summary judgment on two of the Florida state law claims that Plaintiff filed against it. County asserts that no evidence supports Count XI (negligent supervision) and Count XII (negligent retention). Counts XI and XII pertain to County's supervision and retention of Defendants White, Jones, and Godwin insofar as those Defendants allegedly violated various of Plaintiff's rights.

 Negligent retention and negligent supervision are cognizable under Florida law "when, during the course of employment, the employer becomes aware, or should have become aware, of problems with an employee that indicates his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment." *Grice v. Air Prods. & Chems., Inc.,* 82 Fair Empl. Prac.

Cas. (BNA) 532, *available at* 2000 WL 353010, at \*14, (N.D.Fla. Feb.17, 2000) (citations omitted); *Matthews v. City of Gulfport,* 72 F.Supp.2d 1328, 1340 (M.D.Fla. 1999) (citing *Watson v. City of Hialeah,* 552 So.2d 1146, 1148 (Fla. 3d DCA 1989)). As negligence causes of action, the conventional elements of duty, breach, causation, and damages must be shown in negligent retention or negligent supervision claims. *See Doe v. Evans,* 718 So.2d 286, 289 (Fla. 4th DCA 1998), *cert. denied, review granted by* 735 So.2d 1284 (Fla.1999); *Watson v. City of Hialeah,* 552 So.2d 1146, 1149 (Fla. 3d DCA 1989).

County moves for summary judgment on the basis that no evidence shows that anyone at County was, or should have been, aware of the acts Jones and Godwin (and White, for that matter) perpetrated against Samedi. The breach element of Counts XI and XII asks whether "an employer received active or constructive notice of problems with an employee's fitness" and whether it was "unreasonable for the employer not to investigate or take corrective action such as discharge or reassignment." *Garcia v. Duffy,* 492 So.2d 435, 441 (Fla. 2d DCA 1986). In this way, County moves for summary judgment only as to the breach element of Counts XI and XII.[30]

■ Yet again, the issue of notice arises in the instant case. As the Court endeavored to explain in Part III.D.2., *infra,* the evidence shows that County had no reason to know of White, Godwin, or Jones' actions until 1997 when Plaintiff filed her complaint with Ms. Payne and filed her charge of discrimination with the County and the EEOC. In this way, County's argument in favor of summary judgment is sound. However, the Court finds that a question exists as to the reasonableness of the investigative and/or corrective action that County undertook once it was on notice of Plaintiff's complaints of discrimination. Plaintiff offers evidence that County removed Defendant Godwin from the site where Plaintiff worked, only to reassign him later to the very location where Plaintiff was also working. For that reason, summary judgment is **granted** on Count XI, and is **denied** on Count XII only to the extent that County's negligent retention of Defendant Godwin is still at issue.

### F. Sovereign Immunity and Intentional Infliction of Emotional Distress

■ County asserts that its sovereign immunity bars litigation of Count XIII (intentional infliction of emotional distress). Florida law recognizes the intentional infliction of emotional distress tort. *See, e.g., Doe v. Evans,* 718 So.2d at 294. The elements of this tort require a showing

---

**30.** As a threshold issue, "the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law." *Scelta v. Delicatessen Support Servs., Inc.,* 57 F.Supp.2d 1327, 1348 (M.D.Fla.1999). Florida common law does not recognize a tort of sexual harassment in which employers would have a duty to protect their employees from abusive or hostile work environments. *See Ball v. Heilig–Meyers Furniture Co.,* 35 F.Supp.2d 1371, 1375, 1377 (M.D.Fla.1999). Moreover, Title VII does not sustain a negligent supervision or negligent retention claim. *See Grice,* 2000 WL 353010, at \*15. However, allegations of assault and battery can provide the type of underlying wrong sufficient to sustain claims of negligent supervision or negligent retention. *See id.* Here, Plaintiff alleges, *inter alia,* sexual assault as the wrong Jones and Godwin committed, *see* Second Amended Complaint at ¶¶ 114 (Count XI); 118 (Count XII), such that Counts XI and XII are not barred from the outset.

that "(1) the wrongdoer's conduct was intentional or *reckless*; that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Williams v. City of Minneola,* 619 So.2d 983, 986 (Fla. 5th DCA 1993), *reh'g denied* (citations omitted) (emphasis added).

 Florida statutory law provides counties with sovereign immunity from suit when certain tort causes of action are brought against it. To wit, a tort claim may be brought against a "governmental entity ... unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting *wanton and willful* disregard of human rights, safety, or property." Fla.Stat.Ann. § 768.28(9)(a) (West 1997 & Supp.2001) (emphasis added). Counties are governmental entities covered under section 768.28(9)(a) of the Florida Statutes. *See* Fla.Stat. § 768.28(2) (defining counties as " 'state agencies or subdivisions' " for purposes of the act). As the "reckless conduct" requirement in the first element of intentional infliction of emotional distress "is the equivalent of willful and wanton conduct" in section 768.28(9)(a), *see Williams,* 619 So.2d at 986, sovereign immunity shields County from Plaintiff's Count XIII, as that cause of action requires proof of willful and wanton conduct. *See id.* (barring intentional infliction of emotional distress claim brought against city because such a claim requires showing of recklessness, which is akin to wanton conduct, which invokes city's sovereign im-

munity under Fla.Stat. § 768.28(9)). Accordingly, summary judgment is **granted** on Count VIII.

## IV. *Defendants Godwin and Jones' Motion for Judgment on the Pleadings*

Plaintiff's Count XV is a brought under the Violence Against Women Act, 42 U.S.C. § 13981. The United States Supreme Court recently struck down as unconstitutional the federal civil remedy provided for in section 13981. *See United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (holding that Congress's provision of a federal civil remedy for gender-motivated crimes cannot be sustained under either the Commerce Clause or section 5 of the Fourteenth Amendment Accordingly, Godwin and Jones' Rule 12(c) Motion for Judgment on the Pleadings as to section 13981 is **granted**).

In the event that this Court granted summary judgment on Count XV, Jones and Godwin request that Plaintiff's state law claims against them be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(2) and (3). *See* Motion for Judgment on the Pleadings by Defendants Don Godwin and Lem Jones, at 2, n. 1. Federal courts often elect to promote the values of comity and justice, *see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), by declining an exercise of their supplemental jurisdiction once the federal claims for which the court had original jurisdiction are disposed of at summary judgment. *See* 28 U.S.C. § 1367(c)(3); *see also Eubanks v. Gerwen,* 40 F.3d 1157, 1161–62 (11th Cir.1994) (noting that dismissal of state law claims is appropriate once federal claims have been disposed of at summary judgment unless statute of limitations has run for filing case

in state court). As the Court has not granted summary judgment on all federal claims against Defendant County, it will exercise its supplemental jurisdiction over the remaining state law causes of actions, as well.

### Conclusion

Summary judgment is **GRANTED** as to Counts III, IV, V, VI, VII, VIII, IX, X, XI, XIII, and XV.

Summary judgment is **DENIED** as to Counts I, II, and XII, with certain caveats. Counts I and II may proceed, although all allegations relating to Defendant Jones's behavior are time-barred. Count XII survives summary judgment only as far as County's negligent retention of Defendant Godwin is concerned.

A forthcoming order shall set the new dates upon which the Court will preside over both the pre-trial conference and the trial in this matter.